UNITED STATES v. MANTHEI'S BONDSMEN.

(Second Division. Nome. July 12, 1905.)

No. 908.

1. INDICTMENT—CRIMINAL LAW—BAIL—DEMURRER.
Where demurrer to indictment is sustained, it is the duty of the court to resubmit the matter to the grand jury, and the accused is held under bail to await that action.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, § 500.]

2. BAIL—RIGHT OF SURETY TO ATTACK INDICTMENT.
As a general rule, the sufficiency of the indictment cannot be questioned by the sureties when sued for a breach of the bail bond.

3. CRIMINAL LAW—JURISDICTION—PRESUMPTION.
The jurisdiction of the court being unquestioned, every act in the exercise of its jurisdiction is presumed to have been rightly done until the contrary appears. This applies to every judgment or order rendered in the various stages of the proceedings.

4. BAIL—BOND—CONSTRUCTION.
A man's bail are his jailors of his own choosing, and the spirit of their obligation is that they will effectually secure his appearance, and put him as much in the power of the court as if he were in the custody of the law.

This action was brought to recover the penalty of a statutory undertaking or bail bond, conditioned for the appearance in the District Court of one Edward Manthei, charged before T. M. Reed, commissioner, with the crime of perjury. Manthei was admitted to bail by the commissioner on the 19th day of May, 1901. The bond was signed by the three defendants herein named and one E. T. Halloran. The summons was served upon Brown, Taylor, and Mathews, and they have appeared to the action. The complaint recites the bond given in pursuance to the said order of the commissioner. The obligation of the bond, which is given at length in the complaint, was in these terms:

"We [the obligors] hereby undertake that the above-named Edward Manthei shall appear and answer the charge above mentioned in whatever court it may be prosecuted, and shall at all times render himself amenable to the orders and process of said court, and, if convicted, shall appear for judgment, and render himself in execution thereof, or if he fail to perform either of these conditions they will pay to the United States the sum of two thousand dollars."

The bond bears date November 19, 1901. The complaint in paragraph 3 recites that on April 15, 1902, an indictment was returned in open court by the grand jury of the United States District Court for the Second Division of the District of Alaska against said Manthei, charging him with the crime of perjury. Paragraph 4 alleges that the said Manthei on the 15th day of April, 1902, at the opening of the court, having been duly called, failed to appear and answer said charge, or at any time thereafter, according to the terms of said undertaking, and his default owing to his failure to appear was duly entered by said District Court. Paragraph 5 further alleges that on the 15th day of April, aforesaid, the said defendants were notified to produce the person of the said Manthei before the court, and, they having failed so to do, said "bail was duly forfeited" in open court by order of the presiding judge thereof.

The answer filed by the defendants denies the allegations of the three paragraphs of the complaint recited. The defendants in their further and first affirmative defense admit the execution of the said bond, and allege that the indictment returned April 15, 1902, did not charge the said Edward Manthei with any crime; that subsequently, on the 11th day of July, 1904, said Manthei having appeared before the bar of said District Court and pleaded to said indictment, the said indictment was by said court declared to be insufficient to charge the crime of perjury, and thereafter the said charge was dismissed; and that at no time was said defendant Manthei called for arraignment or trial when his presence might be lawfully required and his default entered for nonappearance.

For further defense defendants say that at no time did the District Court aforesaid, or the judge thereof, find that the said Edward Manthei had without sufficient excuse neglected or failed to appear for arraignment, trial, or judgment, or upon any other occasion when his presence in court might be lawfully required, or to surrender himself in execution of judgment, and the said District Court did not at any time cause to be entered upon the journal of said court that said Edward Manthei had without sufficient excuse failed to appear for arraignment, for trial, or judgment, or upon any other occasion when his presence in court might lawfully be required.

The counsel for the parties by oral stipulation made in open court submitted the case for trial by the court without the aid of a jury.

At the trial the government offered in evidence the record of the proceedings of said District Court, found in the criminal journal of said court showing the proceedings of said court for April 15, 1902. This entry, dated April 15, 1902, was put in evidence over the objection of the counsel for the defendants :

"United States of America vs. Edward Manthei.  No. 148.

"United States Attorney McGinn asks that bond given for appearance of the defendant in this court be forfeited unless the bondsmen

produce him forthwith, whereupon the bondsmen were called in open court, and called upon to produce the body of said defendant, Edward Manthei, and after calling and the failure of the bondsmen to produce the said defendant the bond was forfeited, and upon motion of U. S. Assistant Attorney McGinn a bench warrant was ordered to issue for the arrest of the defendant returnable forthwith. Bondsmen J. C. Brown and Sam Taylor answered when their names were called, and Mr. Brown stated that they would try and produce the defendant as quickly as possible."

The criminal register, which was next put in evidence, shows that on April 15th the indictment was returned, and the calling of the bondsmen next ensued, followed by the court's adjudging the forfeiture of the bond. The undertaking and the indictment (148 criminal proceedings) were also introduced in evidence. The defendants then showed by the record that on the 26th day of July, 1904, the court sustained the demurrer to the indictment, and resubmitted the case to the grand jury, with the result that a second indictment was found by the grand jury and returned to the court. The defendants next moved for judgment of dismissal of the action on two grounds: First. Because the indictment returned into court against the said Manthei did not charge the crime of perjury or any crime. Second. Because the record is insufficient to prove a breach of any condition in the undertaking.

Henry M. Hoyt, Dist. Atty., for the United States.

James E. Fenton and Thos. M. Reed, for defendants.

MOORE, District Judge. The first question calling for decision in this case is, should the action be dismissed because of the court's former order in sutaining the demurrer to the indictment in the criminal prosecution for perjury against Edward Manthei, and resubmitting the case to the grand jury? This question is easy of solution, since the Criminal Code for Alaska in section 85 of Carter's Code (page 58) furnishes a conclusive answer. That section is in these words:

"That if the court direct that the case be resubmitted, the defendant, if then in custody, must so remain, unless he be admitted to bail; or if he has already given bail or deposited money in lieu thereof such bail or money is answerable for the appearance of the defendant to answer a new indictment, if one be found."

Irrespective of this statute, it may be stated as a general rule of law that the sufficiency of the indictment cannot be questioned by the bail, or its invalidity set up as a defense to an action for a breach of the bond. Am. & Eng. Ency. of Law, vol. 3, p. 713; Hardy v. United States, 71 Fed. 158, 18 C. C. A. 22.

The main question raised at the trial is, do the records of the District Court establish a breach of the undertaking upon which the action is brought?

In deciding this question, it is conceded that the breach must be established by the record, and not by evidence aliunde. Section 237 of the Criminal Code (part 2) recites the conditions which lead to and work a forfeiture of a bail bond. That section provides:

"That if without sufficient excuse, the defendant neglect or fail to appear for arraignment, or for trial or judgment, or upon any other occasion when his presence in court may be lawfully required (or to surrender himself in execution of the judgment) the court must direct the fact to be entered in its journal; and the undertaking of bail or the money deposited in lieu thereof, as the case may be, is thereupon forfeited."

The defendants argue that the records of the District Court do not show that the defendant in the criminal action ever was called by the court "to appear for arraignment, or for trial or judgment, or upon any other occasion when his presence in court might be lawfully required," and hence could not have, without sufficient excuse, neglected or failed to appear for any of the purposes above stated.

Their further contention is that the record furnishes no proof that the court in obedience to the same section directed the fact of said Manthei's default to appear in its journal. They af-

firm that the directions of section 237 above quoted are mandatory, and, being so, no legal forfeiture has resulted or been adjudged, and hence that there has been no breach of the bail bond.

The facts clearly appearing from the record are these: On April 15, 1902, an indictment against Edward Manthei charging him with perjury was returned into court. On the same day the bondsmen of Manthei were called upon by the court to produce the defendant in court forthwith, on pain of forfeiture of their bond in the event of their failure so to produce him. The bondsmen failing to produce him, their bond was thereupon adjudged by the court to be forfeited, and a bench warrant was also issued for the said defendant's arrest.

The record discloses no excuse whatever for his nonappearance. The main incident of the events, after notice to bail to cause his appearance in court, which caused the court to adjudge the forfeiture was, in short, the failure of the defendant to appear in court.

It may well be presumed that the purpose for which he was required to appear was for arraignment. This presumption is a legitimate and proper one, flowing from the fact that an indictment had been returned against him the same day, and the record shows the return of the indictment to have preceded the call for his appearance. The order in which the events chronicled in the record of April 15, 1902 (preserved by the court), occurred would naturally be as follows: (1) The returning and filing of the indictment of the grand jury; (2) a call or requirement by the court for the presence of the defendant in court preliminary to arraignment, answering the indictment, and trial; and (3) upon his failure to appear in court in response to the requirement for his presence communicated to his bondsmen, an order by the court that his bail bond be forfeited, and that a bench warrant for his arrest be issued.

This order we are warranted by the record in believing

was followed. It cannot be denied that the District Court had jurisdiction of the subject-matter of and proceedings in the criminal action against the defendant Manthei. The jurisdiction of the court being unquestioned, every act of the court in the exercise of its jurisdiction is presumed to have been rightly done until the contrary appears. This applies to every judgment or order rendered in the various stages of the proceedings. Fox v. Hoyt, 31 Am. Dec. 760; Jackson v. Astor, 1 Pin. (Wis.) 137, 39 Am. Dec. 289; Slicer v. Bank of Pittsburgh, 16 How. (U. S.) 571, 14 L. Ed. 1063; Jones on Evidence, vol. 1, p. 63. It is to be noted that section 237 of the Criminal Code, above cited, prescribes the acts which the court must do on its part, and the failures or acts of neglect on the part of a defendant in a criminal case which together will operate to work a forfeiture of the undertaking of his bail.

The only requirement of the section which the record does not affirmatively show to have been complied with by the court was that one which declares that the court must direct the fact of defendant's nonappearance without sufficient excuse to be entered in its journal. All the other requirements were observed, as appears by a reading of the record and by inference fairly drawn therefrom. While it is true that the records contain no entry to the effect that the court did direct the fact to be entered in its journal, the foundation facts for such entry are written in the records. The duty enjoined upon the court was one of form, rather than substance. The substantial and vital matters working a forfeiture are the call upon the defendant to appear when his presence shall be lawfully required, and his failure without excuse so to appear. Under the circumstances, such clear and conclusive evidence of the concurrence of the material and substantial prerequisites to a forfeiture are furnished by the court's records that the minor requisites, namely, that the court direct the defendant's nonappearance to the action to be entered in its journal, may

2 A.R.—30

properly be presumed to have been complied with. This is a case wherein the maxim "Omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium" applies. The principle invoked by the court is thus stated by Mr. Stephen:

"When any judicial or official act is shown to have been done in a manner substantially regular, it is presumed that formal requisites for its validity were complied with." 1 Stephen, Evidence, art. 10.

And even if the direction by the court to enter in the journal the failure of defendant to appear is essential to the validity of a judgment of forfeiture, that act of the court may properly be presumed to have been performed. The omission of the clerk to enter the direction does not import with certainty that the court did not do that which the statute made his duty. The court rendered its judgment of forfeiture, and the law will infer that it was based on all the facts necessary to a valid judgment. When the jurisdiction of a competent court has attached, every act is presumed to have been rightly done until the contrary appears. 1 Jones on Evidence, vol. 1, § 29. The breach of the bail bond appears, not alone by entries of record from which we may deduce at this day the conclusion that a forfeiture resulted by operation of law; it appears further from the fact that the court adjudged the forfeiture. Under such circumstances, the law presumes the judgment or order regular and valid, and, the judgment being upheld as good, we must infer the presence of the facts constituting the breach of the bond, which necessarily was the basis of the judgment.

That the power is given to the District Court to declare or adjudge a forfeiture in proper cases is obvious by a reference to section 72 of the Criminal Code (part 2). That section provides:

"That if the defendant has given bail and does not appear to be arraigned when his personal appearance is necessary therefor, the court in addition to the forfeiture of the undertaking of bail, may order the clerk to issue a bench warrant for his arrest."

When the indictment was found, it cannot be denied that the defendant's appearance in person became necessary for the purpose of arraignment. Arraignment was then a right of the defendant, and the court then had imposed on it the duty to call him for arraignment. This section seems to have been pursued by the court, as a bench warrant was issued following the adjudication of forfeiture.

So, also, it appears by the language of section 181 that for a defendant's nonappearance for judgment the court, in addition to the forfeiture of the undertaking of bail, or of the money in lieu thereof, may direct the issue of a bench warrant.

The reasoning of the defendants' counsel proceeds upon the assumption that a forfeiture of a bail bond can result in law in the specific manner only which section 237, quoted, prescribes. This assumption is not borne out as sound by section 72, just cited, since it clearly confers upon the court the power to adjudge or declare a forfeiture for failure of a defendant to appear when his personal appearance in court is necessary for the purpose of arraignment. So, also, it gives to the court the power to order a forfeiture of the cash or money bail taken in lieu of the written undertaking by sureties.

The counsel for defendants also maintain that the call upon the bondsmen to produce the defendant was not notice to the defendant to appear in court, and their failure to produce him was not a failure on his part to appear.

"A man's bail are his jailors of his own choosing, and the spirit of their obligation is that they will effectually secure his appearance, and put him as much in the power of the court as if he were in custody of the law." Am. & Eng. Ency. of Law, vol. 3, p. 710.

The motion of the District Attorney requiring the bail to produce Manthei was manifestly dictated by the fact that the defendant was not then present in court, or, in other words, did not appear. We may fairly conclude that the District Attorney, if defendant had been present, would not have gone

through the idle ceremony of calling upon the bail to produce him. Notice to the bail to produce the defendant under such circumstances is a call, in effect, upon the defendant to appear in court. Moreover, it was an act of fair play on the part of the court to the bail, and was aimed to prevent their being fixed without notice in liability under the bond. Their failure to produce him upon notice may now be taken as the very best evidence of the fact that the defendant did not appear according to his duty, and the defense set up in this action, that the record does not show a call for his appearance, should not avail the defendants. That he was called to appeal must be taken as established by the record, and that he was called for arraignment follows by a conclusive inference from the record statements.

Upon a careful consideration of the record evidence, aided by the presumptions and principles invoked, as also by the several sections of the code in pari materia, I am fully persuaded that the breach of the defendants' undertaking is fully proved. It therefore only remains for the court to sign findings for plaintiff, and judgment for $2,000, the amount of the penalty of the bond, with costs and disbursements, against the defendants served with the summons and complaint—Brown, Taylor, and Mathews.

All the record evidence admitted by the court at the trial, subject to the objections then made thereto, has been given full force and effect by the court, and the objections to its admissibility overruled. The clerk will make this ruling nunc pro tunc a part of his record of the trial. The testimony of Mr. Landers, also taken under objection, will be stricken from the record, being irrelevant and incompetent to prove a breach of the undertaking, and the record may show this ruling.